STATE OF NORTH DAKOTA                          IN DISTRICT COURT

COUNTY OF GRAND FORKS          NORTHEAST CENTRAL JUDICIAL DISTRICT

| | |
|---|---|
| CONNIE E. LEE LIVING TRUST by and through co-trustees CONNIE E. LEE and DONALD LEE, CONNIE E. LEE and DONALD LEE, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES B. LEBENTHAL, ALEXANDRA LEBENTHAL, and DOES 1 to 10, inclusive, <br><br> Defendants. | Case No. ~~18-2020-CV-0161~~0 <br><br><br> **SUMMONS** |

THE STATE OF NORTH DAKOTA TO THE ABOVE NAMED DEFENDANT:

[¶1]    YOU ARE HEREBY SUMMONED and required to appear and defend against the Complaint in this action, which is herewith served upon you, by serving upon the undersigned an Answer or other proper response within twenty-one (21) days after the service of this Summons and Complaint upon you, exclusive of the day of service.

[¶2]    If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

1


EXHIBIT
A
tabbies®

Dated this 15 day of June, 2020

VOGEL LAW FIRM

By: KrisAnn Norby-Jahner (#08419)
US Bank Building
200 North 3rd Street, Suite 201
PO Box 2097
Bismarck, ND 58502-2097
Telephone: 701.258.7899
Email:    knorby-jahner@vogellaw.com


**REIF LAW GROUP, P.C.**

By: Brandon S. Reif
(*pro hac vice to be submitted*)
Rachel D. Dardashti
(*pro hac vice to be submitted*)
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.494.6500

Email:    docket@reiflawgroup.com
*Attorneys for Plaintiffs*

STATE OF NORTH DAKOTA                         IN DISTRICT COURT

COUNTY OF GRAND FORKS          NORTHEAST CENTRAL JUDICIAL DISTRICT

| | |
|---|---|
| CONNIE E. LEE LIVING TRUST by and through co-trustees CONNIE E. LEE and DONALD LEE, CONNIE E. LEE and DONALD LEE,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES B. LEBENTHAL, ALEXANDRA LEBENTHAL, and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. ____18-2020-CV-01610____<br><br><br>**CIVIL COMPLAINT<br>AND JURY DEMAND** |

**COME NOW** Plaintiffs, by and through their undersigned counsel, and in support of their Complaint and Jury Demand state to the Court the following:

### I.   PARTIES

1.      Plaintiff Connie E. Lee Living Trust ("Trust") is a trust organized under the laws of the State of North Dakota and established on November 21, 2011. The Trust acts by and through its co-trustee plaintiffs Connie E. Lee ("Connie") and Donald Lee ("Don") (collectively, the Trust, Connie and Don are the "Plaintiffs").

2.      Connie and Don are a married couple, both residing in this District, and at the relevant time, were over the age of sixty-five years old.

3.      Defendant James B. Lebenthal ("James") is a resident of the State of New York.

4.     Defendant Alexandra Lebenthal ("Alexandra") is a resident of the State of New York.

5.     At the relevant time, James and Alexandra were investment advisor representatives licensed with the United States Securities and Exchange Commission ("SEC"). James and Alexandra were affiliated with SEC registered investment advisory firm, Lebenthal Asset Management, LLC ("LAM"). James was LAM's Chief Investment Officer and Chief Executive Officer. James and Alexandra were officers and shareholders of Lebenthal Holdings, LLC, the parent company to LAM.

6.     LAM and Lebenthal Holdings, LLC are not sued as defendants because these entities are in bankruptcy. However, since Plaintiffs are not disclosed as creditors in the bankruptcy actions, Plaintiffs intend to seek leave of the bankruptcy court to prosecute claims against LAM and Lebenthal Holdings, LLC in this District.

7.     Plaintiffs allege that, at the relevant time, Defendants acted in concert, as joint venturers, as co-conspirators, partners, alter egos, aiders and co-participants and as agents of each other within the course and scope of their employment and duties with LAM and Lebenthal Holdings, LLC and under N.D.C.C. §§ 10-04-02 and 10-04-17, such that the Defendants are liable for the others' behavior under employment law, agency law, securities law and securities industry custom and practice.

## II.   JURISDICTION

8.     Subject matter jurisdiction exists over this civil action for breach of fiduciary duty and constructive fraud.

9.     Personal jurisdiction exists under North Dakota Rules of Civil Procedure Rule 4 because Defendants gave actionable investment advice causing harm and damage to the

2

Plaintiffs in this District. Defendants solicited the Plaintiffs in this District at an in-person meeting in this District. Defendants knew that Plaintiffs resided in this District and purposefully recommend an investment allocation to manage investment assets under a management fee agreement.

10.    Venue exists in this District because Plaintiffs, who reside in this District, were harmed and damaged by Defendants in this District.

11.    Arbitration cannot be compelled in this action because Defendants are no longer members of the Financial Industry Regulatory Authority ("FINRA"). Defendants' membership with FINRA terminated before this civil action was filed. FINRA Code of Arbitration Procedure for Customer Disputes Rule 12202 states that claims against former members are "ineligible for arbitration…" Plaintiffs exercise their right to prosecute this civil action in this District.

### III.    ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.    Plaintiffs were victims of financial exploitation, defined in N.D.C.C. §§ 50-25.2-01(7) and 10-04-08.5.

13.    Defendants owed the Plaintiffs a fiduciary duty because investment advisors owe their customers and prospective customers a fiduciary duty, as a matter of common law and federal law. Investment advisors are required to put the interests of their customers and prospects ahead of their own interests.

14.    In advance of an anticipated in-person meeting in Grand Forks, in December 2014, James for himself and for Alexandra requested from the Plaintiffs and received nonpublic financial information to develop a comprehensive written investment allocation

3

strategy for the Plaintiffs. James utilized all the information he obtained to build a financial profile for Plaintiffs and to build the asset allocation model.

15.    James was specifically informed in December 2014 that the Plaintiffs were selling a real estate asset with significant capital gains and that Plaintiffs had planned to rely on Internal Revenue Code ("IRC") Section 1031 to defer capital gain taxes in order to purchase another real estate asset.  This like-kind exchange was a very common mechanism to exchange appreciated property for new property without incurring capital gain taxes.  The Section 1031 exchange would have allowed the Plaintiffs to defer all the capital gains tax on the sale and to invest all the proceeds into one or more replacement real estate asset(s).

16.    Plaintiffs had an estimated closing date on the sale in early January 2015 and were reviewing possible replacement assets in December 2014, and both facts were disclosed to James in December 2014.

17.    In anticipation of the Grand Forks meeting, James developed the recommendations and the comprehensive asset allocation models to present to the Plaintiffs and to the Trust beneficiaries.

18.    Investment advisors must develop investment recommendations and allocation models under the best interest fiduciary standard.  Securities rules, norms and customs require a fully informed and balanced presentation of the investment options, including alternatives, and to consider the lowest cost options for the customers and prospects. Investment advisors must make truthful representations and cannot omit material facts that a customer or prospect would want to know in making investment decisions.

19.    At the January 6, 2015 meeting, the Plaintiffs expressed to James the potential of deferring the taxes and that any investment recommendations, to be of interest, would

4

need to conservatively to moderately generate returns greater than the tax deferral benefit and the real estate asset benefit.  Plaintiffs informed James that the estimated taxes, if the Section 1031 was not consummated, would be in the $500,000 range. What follows is the actionable conduct of the Defendants.

20.     At the January 6, 2015 meeting, James handed the Plaintiffs a printed Power Point presentation. It prominently displayed LAM as the asset manager. It prominently disclosed James as the Chief Executive Officer including his photograph and a quote next to his name and photograph: "We build each client's asset portfolio with diligent attention to detail – from security analyses to risk management." Alexandra's photograph and title, President and Chief Executive Officer of Lebenthal Holdings, LLC, was directly below James and included a quote next to her photograph: "Our focus is meeting client needs --- we do this by putting their interests first and providing the best service in the industry."  The Power Point presentation illuminated the Defendants' "expertise" in "asset management" based on the "Lebenthal brand" and illustrious history in asset management.

21.     The Power Point presentation described Defendants' "guiding principle" to treat clients "like family", a written quote from Alexandra. The Power Point presentation described the three pillars of Defendants' investment principles: (1) Commitment to Clients, (2) Fiduciary Care, and (3) Prudent Oversight. The presentation touted the fiduciary standard to put the clients first and a commitment to "…. excellence, transparency, and accessibility, with complete confidence."

22.     The Power Point presentation was approved by Alexandra, James and LAM for use with customers and prospects and utilized by James, with Alexandra and LAM's authorization, to persuade customers and prospects to hire LAM.

5

23.     The Power Point presentation was a persuasive marketing piece emphasizing the fiduciary duty owed by the Defendants to the Plaintiffs as well as the Defendants' world class investment advice. Plaintiffs were impressed and relying on Defendants' professed expertise and professed fiduciary advice.

24.     Defendants' intention at the January 6, 2015 in-person meeting in Grand Forks was to induce Plaintiffs to abandon their preferred plan of a tax-deferred real estate transaction under IRC Section 1031. Plaintiffs had already consummated the sale of the asset which was set to close in early January 2015. Plaintiff had already began vetting potential replacement properties for a Section 1031 exchange.

25.     James flew to Grand Forks to talk the Plaintiffs out of the Section 1031, even though the Defendants concealed from the Plaintiffs that the Section 1031 was in their best interest.

26.     Plaintiffs reposed great trust and confidence in Defendants as experienced investment advisors. Don and Connie were an elderly couple who were vulnerable, susceptible and reliant on the Defendants' professed expertise for investment advice. Defendants made false and misleading statements and conducted themselves in violation of the fiduciary duty. Instead of providing the Plaintiffs with a balanced comparison and contrast of Defendants' asset allocation strategy versus the Section 1031 exchange, Defendants singularly presented the asset allocation models without evaluating the Section 1031 exchange option.

27.     In prior under oath testimony, James claimed he could not describe a Section 1031 exchange, nor its mechanics and denied any memory of discussing the Section 1031

exchange with the Plaintiffs or the witnesses who attended the January 6, 2015 meeting. The witnesses will corroborate the Plaintiffs' events at the meeting in Grand Forks.

## IV.   FIRST CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY

28.     Plaintiffs were prospective customers of LAM and the Defendants at the January 6, 2015 meeting and were owed a fiduciary duty.  LAM was indirectly owned and controlled by James and Alexandra. James as the Chief Executive Officer of LAM and Alexandra as the Chief Executive Officer and President of LAM's parent company, Lebenthal Holdings, LLC. James and Alexandra were licensed with the SEC as investment advisors and owed customers and prospective customers a fiduciary duty under common law and federal securities statutes.

29.     This special relationship created a common law fiduciary duty and Plaintiffs expected Defendants to give them faithful, honest service and act in their best interests.

30.     As fiduciaries, Defendants were obligated to act with the highest good faith towards Plaintiffs regarding all of their financial and securities affairs.

31.     Defendants breached their fiduciary duty and the duty of loyalty for inducing the Plaintiffs to abandon the Section 1031 exchange to follow Defendants' investment advice and recommendations.  James advised Plaintiffs that Defendants' recommended investments was the best advice for Plaintiffs' financial situation. James wholly ignored the substantial tax deferral benefits under the Section 1031 exchange and failed to inform Plaintiffs that the tax deferral benefits available under the Section 1031 exchange was in Plaintiffs' best interests to consummate.

32.     Defendants did not recommend less risky, less costly alternative strategies especially the Section 1031 exchange.

33.     Defendants are liable to Plaintiffs because, as fiduciaries, failing to inform, failing to disclose material facts and failing to recommend that Plaintiffs pursue the Section 1031 exchange offends the fiduciary duty of care owed to the Plaintiffs.  Defendants' breaches deprived the Plaintiffs of their right to make a fully informed investment decision which would have earned them significant tax-deferral and the appreciation opportunities in owning real estate.

34.     Defendants violated the securities laws and rules, including N.D.C.C. § 10-04-10.1 and § 10-04-15, as well as industry standards and norms requiring investment advisors to identify, evaluate and recommend investments in the customers' best interest. Defendants' breaches included their failure to identify, evaluate and warn of the foreseeable consequences of the wealth and asset management portfolio such as tax-related, tax-mitigation and lost opportunities that were reasonably foreseeable in the recommended investment advice to the Plaintiffs.  Defendants, as fiduciaries, cannot disclaim the duty to identify, assess and warn of tax liabilities and tax mitigation in a real estate exchange that would implicate the Section 1031 exchange benefits.

35.     The Section 1031 exchange tax benefits should have been well known to Defendants and a reasonably foreseeable consequence.  Securities industry norms and standards required Defendants to consider and assess the pros and cons of the taxes, including liabilities and deferrals. Defendants' advice was material to Plaintiffs who asked Defendants for the comparative analysis of Defendants' recommended strategy versus the Section 1031 exchange.

8

36.     Defendants intentionally caused Plaintiffs to suffer emotional distress including humiliation, shame, embarrassment, restlessness, self-doubt, anxiety, stress and mental anguish, psychological and physical pain in an amount to be determined at trial.

37.     This action is timely under the six years limitations of N.D.C.C. § 28-01-16.

38.     Defendants' breach of fiduciary duty proximately caused Plaintiffs' harm for a sum not less than $627,260.

39.     Defendants acted with oppression, fraud or actual malice under N.D.C.C. § 32-03.2-11 and are liable for exemplary or punitive damages.

## V.     SECOND CAUSE OF ACTION FOR CONTRUCTIVE FRAUD

40.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs as though fully set forth herein.

41.     This action is timely under the six years limitations period of N.D.C.C. §28-01-16 and is pled under N.D.C.C. § 9-03-09.

42.     As previously pled herein, Defendants breached duties, both in negligence and fiduciary in nature, to gain an advantage of the Plaintiffs by misleading them or prejudicing them with the actionable investment advice. The breached induced and encouraged the Plaintiffs, based on professed world class investment recommendations to abandon the Section 1031 exchange.  The advantage gained by the Defendants was to manage the assets and to earn management fees for actionable investment advice.  The breaches included negligent or misleading investment advice regarding asset allocation, tax-deferral, tax-mitigation and lost opportunity advice.

43.     Defendants intentionally caused Plaintiffs to suffer emotional distress including humiliation, shame, embarrassment, restlessness, self-doubt, anxiety, stress and

9

mental anguish, psychological and physical pain in an amount to be determined at trial.

44.     Defendants' constructive fraud proximately caused Plaintiffs' harm for a sum not less than $627,260.

45.     Plaintiffs' damages are identified in the prayer for relief and the constructive fraud cause of action warrants the remedy of rescission as well.

46.     Defendants acted with oppression, fraud or actual malice under N.D.C.C. §32-03.2-11 and are liable for exemplary or punitive damages.

## VI.     THIRD CAUSE OF ACTION FOR NEGLIGENCE

47.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs as though fully set forth herein.

48.     This action is timely under the six years limitations of N.D.C.C. § 28-01-16.

49.     The theories are negligence and negligent infliction of emotional distress, a derivative of negligence.

50.     Defendants owed the Plaintiffs a duty to act as reasonable investor advisors. Defendants' conduct fell below the securities industry standard of care and the Plaintiffs were harmed by Defendants' negligence for a sum not less than $627,260.

51.     Defendants negligently caused Plaintiffs to suffer emotional distress including humiliation, shame, embarrassment, restlessness, self-doubt, anxiety, stress and mental anguish, psychological and physical pain in an amount to be determined at trial.

## VII.    FOURTH CAUSE OF ACTION FOR VIOLATIONS OF N.D.C.C. §10-04-17

52.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs as though fully set forth herein.

10

53.     Defendants violated the North Dakota Securities Act based on the previously pled allegations.

54.     Defendants are jointly and severally liable for the violations pursuant to N.D.C.C. § 10-04-17(6).

55.     This action is timely under the five years limitations period of N.D.C.C. § 10-04-17(5) because the Plaintiff did not know or reasonably should not have known of the Defendants' breaches in 2015.  Defendants failed to perform a tax-deferral, tax-mitigation and tax offset assessment for the Plaintiffs when rendering the investment advice. Absent comparative analyses performed or at least offered by the Defendants, as fiduciaries, the Plaintiffs were unaware and could not have become aware of the facts forming the basis of the actional advice.

56.     The earliest the Plaintiffs knew or should have known that Defendants had not even considered the tax consequences or tax mitigation of the investment advice and asset allocation recommendations was in February 2020.  In February 2020, James testified under oath in an arbitration hearing that he was unaware of the purpose of a Section 1031 exchange and had not considered tax implications or tax mitigation in rendering the investment advice to the Plaintiffs.

57.     Alexandra testified at that 2020 arbitration hearing that when James presented investment advice and asset allocation recommendations on behalf of LAM to the Plaintiffs, James was acting within the course and scope of his fiduciary responsibilities as an investment advisor and officer of LAM.

58.     The remedies include actual damages, rescission, interest, costs and attorneys' fees, among others. Plaintiffs were harmed for a sum not less than $627,260.

11

## VIII.    JURY DEMAND

Plaintiffs demand a trial by jury.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment:

1. Awarding economic damages on each claim in an amount to be established at trial and not less than $627,260;

2. Awarding rescission of the investments on each claim, except negligence;

3. Awarding noneconomic damages on each claim in a reasonable sum but not less than fifty thousand dollars;

4. Awarding exemplary or punitive damages on each claim, except negligence, in a reasonable sum but not less than fifty thousand dollars;

5. Awarding attorneys' fees and cost of suit on each claim by statute or common law;

6. Awarding prejudgment interest on each claim at the maximum rate; and

7. Granting such other further relief as the court may deem just and proper.


Dated: June 15, 2020                **VOGEL LAW FIRM**

                                    By:   KrisAnn Norby-Jahner (#08419)
                                          US Bank Building
                                          200 North 3rd Street, Suite 201
                                          PO Box 2097
                                          Bismarck, ND  58502-2097
                                          Telephone:  701.258.7899
                                          Email:    knorby-jahner@vogellaw.com


*[cont'd to next page]*

12

Dated: June 15, 2020

**REIF LAW GROUP, P.C.**

*Brandon S. Reif*

By: Brandon S. Reif
(*pro hac vice to be submitted*)
Rachel D. Dardashti
(*pro hac vice to be submitted*)
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone:  310.494.6500
Email:      docket@reiflawgroup.com
*Attorneys for Plaintiffs*

13