**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| Connie E. Lee Living Trust, et. al., ) | |
| ) | |
| Plaintiffs, ) | **ORDER GRANTING DEFENDANT** |
| ) | **ALEXANDRA LEBENTHAL'S** |
| vs. ) | **MOTION TO DISMISS FOR LACK** |
| ) | **OF PERSONAL JURISDICTION** |
| James B. Lebenthal, Alexandra, ) | |
| Lebenthal, and DOES 1 to 10, inclusive, ) | |
| ) | |
| Defendants. ) | Case No. 1: 20-cv-130 |

Before the Court is Defendant Alexandra Lebenthal's ("Alexandra") motion to dismiss for lack of personal jurisdiction filed on August 14, 2020.  See Doc No. 7.  The Connie E. Lee Living Trust, Connie Lee, and Donald Lee filed a response in opposition to the motion on September 4, 2020.  See Doc. No. 21.  Alexandra filed a reply brief on September 18, 2020.  See Doc. No. 24. For the reasons set forth below, Alexandra's motion to dismiss for lack of jurisdiction is granted.

**I.      BACKGROUND**

Plaintiff Connie E. Lee Living Trust ("Lee Trust") is a trust organized under the laws of the State of North Dakota and established on November 21, 2011.  The Trust acts by and through its co-trustee plaintiffs Connie E. Lee and Donald Lee ("the Lees") [1].  The Lees are a married couple, both residing in North Dakota, and at the relevant time, were over the age of sixty-five years old.

Defendant James B. Lebenthal ("James") is a resident of the State of New York and was Chief Investment Officer and Chief Executive Officer of Lebenthal Asset Management ("LAM"). Defendant Alexandra Lebenthal is a resident of the State of New York and was President and Chief

---

[1] Collectively, the Trust, Connie Lee, and Donald Lee will be referred to as "Plaintiffs."

1

Executive Officer of Lebenthal Holdings, LLC ("Holdings"). James and Alexandra were both officers and shareholders of Holdings; Holdings is the parent company of LAM.

In the complaint, the Plaintiffs allege James and Alexandra breached their fiduciary duties owed to them as prospective clients. See Doc. No. 1, p. 9. The Plaintiffs state that because James and Alexandra were investment advisor representatives licensed with the United States Securities and Exchange Commission ("SEC"), and were officers and shareholders of Holdings and LAM, the Defendants owed them a fiduciary duty under common law and federal securities statutes, which required them to give faithful, honest service, and act in the Plaintiffs' best interests. The Plaintiffs allege the Defendants received nonpublic financial information to develop an asset allocation model and the actions of the Defendants fell below the industry standard of care. The Plaintiffs argue the Defendants breached this duty by ignoring the tax deferral benefits and inducing the Plaintiffs to abandon their planned Internal Revenue §1031 exchange ("1031 exchange").

The Plaintiffs further allege the Defendants violated N.D.C.C. §§ 10-04-02 and 10-04-17 by acting in concert, as joint-venturers, co-conspirators, partners, alter egos, aiders, and co-participants, and as agents of each other within the course of their employment and duties with Holdings and LAM, respectively. The Plaintiffs argue the Defendants are liable for each other's behavior under employment; agency; and securities law, industry custom, and practice.

The Plaintiffs filed this action in the Northeast Central Judicial District of North Dakota against James B. Lebenthal, Alexandra Lebenthal, and DOES 1 to 10, alleging James and Alexandra breached their fiduciary duty, engaged in constructive fraud, acted negligently, and violated the North Dakota Securities Act. In response to the complaint, the Defendants removed the action to this Court and Alexandra filed the instant motion to dismiss for lack of personal

jurisdiction, as well as a motion to dismiss for failure to state a claim on August 14, 2020.  See Doc. Nos. 1 & 7.  The Plaintiffs filed a response in opposition to Alexandra's motion on September 04, 2020.  See Doc. No. 21.  On September 18, 2020, Alexandra filed a reply brief.  See Doc. No. 24.  Alexandra filed a motion requesting oral argument regarding her motions to dismiss.  See Doc. No. 10.  On October 19, 2017, the Plaintiffs filed a Financial Industry Regulatory Authority ("FINRA") arbitration action against Lebenthal & Co. LLC, Lebenthal Wealth Advisors, LLC, Alexandra Lebenthal, and James Lebenthal.  The record is scarce pertaining to the nature of the arbitration.  However, the record reveals the arbitration took place on February 20, 2020, - February 29, 2020, in Bismarck, North Dakota.  Pursuant to FINRA practices, FINRA sets the venue where the Plaintiffs reside.

The Plaintiffs argue jurisdiction is proper because this Court has personal jurisdiction over James; North Dakota's long-arm statute provides for the exercise of specific personal jurisdiction over Alexandra; and there is evidence of an agency relationship between Alexandra and James.  The Defendants contend this Court does not have specific personal jurisdiction over Alexandra because the Plaintiffs failed to allege sufficient facts to establish jurisdiction and the nature, quality, and quantity of Alexandra's contacts with North Dakota do not exist.  In her motion to dismiss, Alexandra contends she has never had personal contact with the forum state of North Dakota sufficient to impart this Court with jurisdiction over her.  Alexandra submits her only contact with North Dakota was to attend the FINRA arbitration in Bismarck, North Dakota, and that is not sufficient to establish jurisdiction.

## II.     LEGAL DISCUSSION

Alexandra contends the Court lacks personal jurisdiction over her and the claims against her should be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. To defeat a motion to dismiss for lack of personal jurisdiction, the Plaintiffs need only establish a prima facie showing of personal jurisdiction over Alexandra. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). The Plaintiffs' prima facie showing is analyzed "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The party seeking to establish that a court has *in personam* jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d at 647.

This Court may properly exercise personal jurisdiction over a party if a two-step inquiry is satisfied. First, the party must be "amenable to service of process under the appropriate long-arm statute." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Second, the party challenging personal jurisdiction must have engaged in activities which satisfy the minimum contacts requirement of the Due Process Clause. Id. The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process." Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223. The Eighth Circuit Court of Appeals has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the Court must determine whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006).

"Due Process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Dever, 380 F.3d at 1073 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). A non-resident defendant's contacts with a forum state, for example, must be sufficient to cause the defendant to "reasonably anticipate being haled into court there." Epps, 327 F.3d at 648. There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum: general jurisdiction and specific jurisdiction. With respect to general personal jurisdiction over a defendant, "a defendant may be subject to the forum state's exercise of personal jurisdiction if contacts with the state are continuous and systematic." Id. A state has specific personal jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state. Johnson, 444 F.3d at 956.

The Eighth Circuit has established a five-factor test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant:

> (1) the nature and quality of a defendants' contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Dever, 380 F.3d at 1073-74. In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algoddoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995). However, the Eighth Circuit directs courts to give "significant weight" to the first three factors. Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004). The Eighth Circuit's five-part test essentially "blends" the tests for general and specific jurisdiction. See Northrup King Co., 51 F.3d at 1388.

5

Under the test outlined above, the Plaintiffs have the burden of proving facts to support personal jurisdiction. Dever, 380 F.3d at 1072. The Plaintiffs need not prove personal jurisdiction by a preponderance of the evidence until a court holds an evidentiary hearing or until trial. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). Absent a hearing, the Court will consider the facts in the light most favorable to the non-moving party and resolve all conflicts in favor of that party. Romak USA, Inc., v. Rich, 383 F.3d at 983-84.

Personal jurisdiction can be properly asserted over a corporation if the subsidiary or agent is acting as its alter ego. Epps, 327 F. 3d at 648-49 (citing Lakota Girl Scout Council v. Harvey Fund-Raising Mgmt, Inc., 519 F.2d 634, 637 (8th Cir. 1975)). If the sufficiently connected subsidiary corporation is the alter ego of the non-resident corporate defendant, the subsidiary's contacts are those of the parent corporation's, and due process is satisfied. Id. (citing Lakota Girl Scout Council, 519 F.2d at 637). However, a corporation is not doing business in a state merely by the presence of its wholly owned subsidiary. Id. There is nothing in the record or pleadings to show James was acting on behalf of or at the direction of Alexandra. Because James was acting in his official capacity with LAM, no alter ego claim for general personal jurisdiction needs to be addressed among the five factors determining personal jurisdiction. Applying the five-factor test for minimum contacts to Alexandra, the Court finds it does not have personal jurisdiction over Alexandra.

### A. NATURE AND QUALITY OF CONTACTS

In examining the nature and quality of the contacts, the primary issue is whether the non-resident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 576 (8th Cir.

1992). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state. Id. The contact(s) with the forum state must be more than "random, fortuitous, or attenuated." Id. (citing Burger King v. Rudzewicz, 471 U.S. 462, 472 (1985)). Nor shall the contact(s) be the result of "unilateral activity of another party or a third person." Id.

Here, Alexandra contends the Court lacks jurisdiction over her because her only contact with the forum state of North Dakota was to attend an FINRA arbitration in Bismarck, North Dakota, in February 2020. Alexandra submits the Court lacks jurisdiction over her because she did not transact business with any of the Plaintiffs; she did not participate in the 2015 meeting with the Plaintiffs that is the subject of the complaint; she did not have a controlling interest in Holdings, and she did not have an agency relationship with James. The Plaintiffs contend personal jurisdiction is proper over Alexandra through principles of agency. From a careful review of the evidence in the record and pleadings, the Court finds Alexandra did not purposefully avail herself of North Dakota and her contact with North Dakota was random and merely fortuitous in nature. But for Alexandra's presence at the mandated arbitration five years after the 2015 meeting at issue, there is nothing to suggest she "purposefully directed" her activities at the residents of North Dakota. The Court finds that the nature and quality of the contacts with North Dakota does not support the exercise of personal jurisdiction.

### B.     QUANTITY OF CONTACTS

It is well-established that specific jurisdiction can arise from a single contact with the forum state. Fulton v. Chicago, Rock Island & P.R. Co., 481 F.2d 326, 334-36 (8th Cir. 1973). Quantity is a consideration when general jurisdiction is alleged. Lakin v. Prudential Sec, Inc., 348 F.3d 704,

712 (8th Cir. 2003). General jurisdiction arises with continuous and systematic contacts between the defendant and the forum state. <u>Helicopteros Nacionales De Colombia, S.A. v. Elizabeth Hall et al</u>, 466 U.S. 408, 415-16 (1984). The inquiry whether a forum State may assert specific jurisdiction over a non-resident defendant focuses on the relationship among the defendant, the forum, and the litigation. <u>Walden v. Fiore</u>, 571 U.S. 277, 283 (2014). For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. <u>Id.</u> First, the relationship must arise out of contacts that the defendant creates with the forum state. <u>Id.</u> Second, the minimum contacts analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who live there. <u>Id.</u> at 282-83.

As mentioned above, Alexandra's sole contact with the forum state consists of traveling to North Dakota for a mandated FINRA arbitration in 2020. The Plaintiffs did not present any evidence in their complaint that Alexandra traveled to or conducted business in North Dakota with the Plaintiffs or with any other individual. Alexandra has not held out her expertise or services in North Dakota. Alexandra did not participate in the 2015 meeting in Grand Forks which is the subject of the complaint. Alexandra never had any contact with the Plaintiffs, either verbal or written. Alexandra was not the Plaintiffs' investment advisor, nor did she offer financial, investment, or tax advice to them. The Plaintiffs contend the power point presentation provided to them at the 2015 meeting in Grand Forks, which contained a quote and photo of Alexandra, shows she did business and availed herself of the jurisdiction. However, the Plaintiffs do not offer any supporting evidence to show Alexandra created, approved, or presented the power point presentation to the Plaintiffs. The Court finds that the quantity of contacts were not continuous

and systematic, and this factor does not weigh in favor of exercising general or specific personal jurisdiction.

### C.     RELATION OF CONTACTS TO CAUSE OF ACTION

Alexandra's contact with North Dakota relates to this cause of action.  Alexandra traveled to North Dakota in February of 2020 to participate in a mandatory FINRA arbitration, in which the Plaintiffs allege the same claims they do in this cause of action.  The Plaintiffs allege Alexandra, through James, financially exploited them, breached the fiduciary duty owed to prospective clients, engaged in constructive fraud, acted negligently in advising the Plaintiffs, and violated the North Dakota Securities Act.  See Doc. No. 1.  These actions form the basis for of the Plaintiffs' claims against Alexandra that were directed at North Dakota.  The Court finds it does not have jurisdiction over Alexandra to adjudicate the above claims because there is nothing in the record or pleadings to support the contention that James was acting as Alexandra's agent, or as the alter ego of Holdings.

### D.     INTEREST OF THE FORUM STATE AND CONVENIENCE OF THE PARTIES

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance."  Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003).  The fourth factor is the interest in the forum state in adjudicating the cause of action.  The Court finds it is in the interests of North Dakota to adjudicate the sale of fraudulent securities in North Dakota; and the Plaintiffs' claims relate to the fraudulent sale of securities in North Dakota.  The Lees allege they sustained damages of at least $627,260 as a result of the Defendants' misrepresentations and breach of fiduciary duties.  These

specific claims are local in nature. Therefore, the interest of North Dakota in adjudicating these claims is heightened.

The fifth factor pertains to the convenience of the parties. The Court finds that, although the Defendants are not residents of North Dakota, the State would be a convenient forum for this dispute because the conduct related to the sale of fraudulent securities occurred in North Dakota. Therefore, this factor weighs in favor of exercising personal jurisdiction. While both factors four and five weigh in favor of the Plaintiffs, they are of secondary importance. See Stanton, 340 F.3d at 694; Northrup King Co, 51 F.3d at 1388. Based on Alexandra's scant contacts with North Dakota and the Lees, and the totality of the circumstances, the Court expressly finds that exercising personal jurisdiction over her would violate due process. See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997). The exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. The Plaintiffs have not sustained their burden of proof of establishing the Court's *in personam* jurisdiction. Therefore, the Court finds it does not possess personal jurisdiction over Alexandra.

### III.    **CONCLUSION**

The Court has carefully considered the entire record, the parties' briefs, and the relevant case law. For the reasons set forth above, the Court **GRANTS** Alexandra's motion to dismiss for lack of personal jurisdiction (Doc. No. 7) and finds **MOOT** Alexandra's motion to dismiss for failure to state a claim and motion requesting oral arguments (Doc. Nos. 16 and 10).

**IT IS SO ORDERED.**

Dated this 15th day of December, 2020.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court